**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DANA MATTINGLY                                                                                          PLAINTIFF

v.                                             No. 4:11CV00215 JLH

DENNIS MILLIGAN                                                                                        DEFENDANT

**OPINION AND ORDER**

Dana Mattingly, a former employee in the office of the Saline County Circuit Clerk, brings this action against Dennis Milligan, individually and in his official capacity as the Saline County Circuit Clerk, alleging that Milligan terminated her in violation of her rights to free speech under the First Amendment and Fourteenth Amendment to the United States Constitution and under the Arkansas Constitution. Mattingly also alleges that she was denied her right to remonstrate under the Arkansas State Constitution. Mattingly seeks redress pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993, codified in Arkansas Code Annotated § 16-123-101 *et seq*. Milligan has moved for summary judgment. For the following reasons, the motion is granted in part and denied in part.

**I.**

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine

dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

**II.**

Mattingly was an at-will employee in the office of the Saline County Clerk from 2008 until December 31, 2010. Milligan was elected Saline County Circuit Clerk in 2010. His opponent was the incumbent, Doug Kidd. Mattingly supported Kidd, at least to the extent that she wore a Kidd campaign shirt to a parade. Mattingly saw Milligan at the parade but does not know whether he saw her. Milligan testified that he did not see Mattingly at the parade.

In December of 2010, the Circuit Clerk's office had nine full-time employees and a number of part-time employees. On December 27, 2010, Milligan sent a letter to three full-time employees and one part-time employee informing them that he had decided not to retain them.[1] Milligan knew that two of the employees had supported Kidd, and there is some evidence that he knew that a third employee had supported Kidd. On the same day, Mattingly and the remaining employees were informed that they would be retained.

---

[1] One of the full-time employees had announced her intent to retire.

After work on December 27, some of the employees met at a restaurant. While in the parking lot of the restaurant, Mattingly made a post to her Facebook wall, using her mobile phone, saying, "So this week not going so good bad stuff all around[.]" Moments later someone responded, "Will be praying. Speak over those bad things positively[.]" Two minutes after this post, Mattingly posted another comment: "I am trying my heart goes out to the ladies in my office that were told by letter they were no longer needed ... It's sad[.]" These posts attracted a number of responses from Saline County residents, expressing concern for Mattingly's position and expressing anger at Milligan's decision to terminate the employees. Mattingly had 1,300 "friends" on Facebook, most of whom are residents of Saline County.

Milligan testified at his deposition that he received six calls on his home telephone from unknown constituents regarding Mattingly's Facebook post. The callers criticized him for discharging the four employees. The terminations also attracted local media attention.

On December 28, 2010, Milligan called Mattingly and the two of them spoke by telephone. Mattingly testified that Milligan told her that he did not believe that she could work for him and that she had posted something on Facebook that had upset his constituents and caused them to call him with concerns. Mattingly also testified that she told Milligan that she could still work for him but he said that he believed that the best thing was for them to go their separate ways.

Later that day, Milligan sent Mattingly a letter informing her she would not be retained. The letter stated, "I respect your personal life and whatever you do or do not do is your business. The issue is when I have constituents calling me with concerns about comments you have made that are in a public domain."

**III.**

As noted above, Mattingly asserts claims under both 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993. Because the Arkansas Civil Rights Act can be construed consistently with § 1983 (*see* Ark. Code Ann. § 16-123-105(c)), Mattingly's claims under both statutes will be analyzed together.

**A.     Free Speech**

Milligan argues that he is entitled to summary judgment on Mattingly's free speech claim because her Facebook posts were not protected speech. First, Milligan argues that the posts did not touch on a matter of public concern. Second, Milligan asserts that the posts were "immediately disruptive" to him in his position as the prospective Circuit Clerk. Finally, Milligan argues that he is entitled to qualified immunity because no reasonable official could know that the posts touched on a matter of public concern.

The rights of public employees under the First Amendment were explained in *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), and *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). The Eighth Circuit has summarized *Pickering* and *Connick* as follows:

> Courts addressing claims by public employees who contend that they have been discharged for exercising their right to free speech must employ a two-step inquiry. *Dunn v. Carroll*, 40 F.3d 287, 291 (8th Cir. 1994). First, the court must determine whether the speech may be described as "speech on a matter of public concern." [citing *Connick*, 461 U.S. at 146, 103 S. Ct. at 1689.] If so, the second step involves balancing the employee's right to free speech against the interests of the public employer. [citations omitted.] The focus is on striking "a balance between the interests of the [employee], as a citizen, in commenting on matters of public concern and the interests of the [public employer] in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S. Ct. at 1734. These two questions are matters of law for the court to resolve. *Dunn*, 40 F.3d at 291.

*Kincaid v. City of Blue Springs, Mo.*, 64 F.3d 389, 395 (8th Cir. 1995); *see also Sexton v. Martin*, 210 F.3d 905, 910 (8th Cir. 2000).

A court must analyze the content, form, and context of the speech to determine whether it related to a matter of public concern. *Sparr v. Ward*, 306 F.3d 589, 594 (8th Cir. 2002). "Matters of public concern include matters of political, social, and other concern to the community." *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000) (citing *Connick*, 461 U.S. at 147-48, 103 S. Ct. 1684). Generally, "[s]peech that criticizes a public employer in his capacity as a public official" addresses matters of public concern. *Id.* "Heightened public interest in a particular issue, while not dispositive, may also indicate that the issue is one of public concern." *Id.*

Milligan won a hotly contested race for the position of Saline County Circuit Clerk. Following his election, Milligan sent a letter to four employees informing them that he would not retain them. That evening, Mattingly made two posts on Facebook in quick succession stating that bad things were all around and that her heart went out to those ladies who were told they were no longer needed. The posts could be viewed directly by at least 1,300 people, most of whom were residents of Saline County. As Milligan said in his letter of termination, Mattingly's statements were "in a public domain." *See also Morgan v. Ford*, 6 F.3d 750, 754 n.5 (11th Cir. 1993) ("[P]ublic disclosure nonetheless remains a relevant factor in determining whether the speech was a matter of public concern."). As evinced by their comments in response, some who read the posts understood Mattingly to be speaking about Milligan's decision to terminate some employees in the Circuit Clerk's office. These comments included criticisms of Milligan's termination decisions. According to Milligan, six constituents were motivated by Mattingly's posts to call him at home to complain about the terminations. Television news stations, newspapers, and an internet blogger

5

reported on the Milligan's decision to terminate the employees. Viewing the evidence in Mattingly's favor, her Facebook posts touched on a matter of public concern.

Milligan argues that, even if his termination decisions were a matter of public concern, Mattingly's Facebook posts are too vague for protection. While Mattingly's first post is certainly vague, four minutes later she posted an additional comment which stated "I am trying my heart goes out to the ladies in my office that were told by letter they were no longer needed... It's sad[.]" It is apparent in the context that this additional comment referred to Milligan's decision not to retain certain employees in the Circuit Clerk's office. Indeed, Milligan himself—and, according to him, a number of his constituents—understood Mattingly's posts to refer to his termination decisions.

Milligan also argues that Mattingly's Facebook posts are not a matter of public concern because she only had a private motive, that is to receive emotional affirmation and support, in posting her comments. The cases upon which Milligan relies for this argument stand for the proposition that an employee's speech made in her capacity as an employee is not generally protected if the speech is made "to further the employee's private interest." *Sparr*, 306 F.3d at 594. The Supreme Court precedent upon which the decisions cited by Milligan stand, distinguishes between protected speech made "as a citizen upon matters of public concern" and unprotected speech made "as an employee upon matters only of personal interest." *Connick*, 461 U.S. at 147, 103 S. Ct. at 1690. This distinction arises from the tension between the principle that the government as government may not curb a citizen's speech while the government as employer, like other employers, has a legitimate need to promote the efficiency of its operations. *Id.* at 142, 103 S. Ct. at 1687. Even if, as Milligan contends, Mattingly's Facebook posts were made primarily to further her private interest in receiving emotional support and affirmation, the fact remains that she

did not make them as an employee but as a citizen. *Cf. Sparr*, 306 F.3d at 595 ("[A] public employee does not give up her right to free speech simply because her speech is private[.]") (citing *Givhan v. W. Consol. Sch. Dist.*, 439 U.S. 410, 414, 99 S. Ct. 693, 695-96, 58 L. Ed. 2d 619 (1979)).

In sum, Mattingly has offered evidence that a number of Saline County residents, including Milligan, understood Mattingly's posts to refer to Milligan's decision to terminate employees in the Circuit Clerk's office. Mattingly has also offered evidence that residents of Saline County were sufficiently concerned about the terminations that Milligan received individual complaints from several constituents. All of this occurred while news media were reporting on the terminations. In light of the context, content, and format of Mattingly's Facebook posts, and applying the standards enunciated in Rule 56, it appears that Mattingly's speech related to a matter of public concern.

Milligan contends that Mattingly's posts were immediately disruptive to his transition into the position of Circuit Clerk. Milligan concedes, however, that he is unable to point to any evidence that Mattingly's posts "adversely affected the efficiency of the" Circuit Clerk's office. *Shockency v. Ramsey Cnty.*, 493 F.3d 941, 949 (8th Cir. 2007). Indeed, Milligan has pointed to no evidence that Mattingly's posts caused any disruption at all. The Eighth Circuit has held that if the government employer cannot produce some evidence that the employee's speech disrupted the workplace, the court need not proceed to the balancing stage absent exceptional circumstances. *Gordon v. City of Kan. City, Mo.*, 241 F.3d 997, 1003 (8th Cir. 2001); *Belk*, 228 F.3d at 881. The Eight Circuit also has stated that "bare allegations that the speech caused" disruptions supported by minimal evidence is insufficient to invoke the *Pickering* balancing test. *Kincade*, 64 F.3d at 398. Here, Milligan offers even less—namely, bare allegations that he was concerned that Mattingly's posts might have a prospective impact on how smooth his transition would be into his new position.

Because there is no evidence that Mattingly's comments disrupted the operations of the Circuit Clerk's office, there is nothing to place in the scales opposite Mattingly's right to free speech pursuant to *Pickering*.

Milligan also argues that he is entitled to qualified immunity on Mattingly's free speech claim "because no reasonable person would know that such an ambiguous and oblique statement on Facebook would constitute a matter of public concern." The Eighth Circuit has explained the qualified immunity doctrine as follows:

> Under the doctrine of qualified immunity, state actors are protected from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (internal quotations omitted); *McCaslin v. Wilkins,* 183 F.3d 775, 778 (8th Cir. 1999). The qualified immunity inquiry is a two-step process. First, this Court must ascertain whether the plaintiffs have asserted a violation of a constitutional or statutory right. *See Munz v. Michael*, 28 F.3d 795, 799 (8th Cir. 1994) (citing *Beck v. Schwartz,* 992 F.2d 870, 871 (8th Cir. 1993) (per curiam)). Second, we must determine whether that constitutional right was clearly established at the time that the plaintiffs were discharged. *See Munz,* 28 F.3d at 799. "This court has . . . taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry . . . ." *Boswell v. Sherburne County,* 849 F.2d 1117, 1121 (8th Cir. 1988), *cert. denied*, 488 U.S. 1010, 109 S. Ct. 796, 102 L. Ed. 2d 787 (1989). "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Buckley v. Rogerson,* 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). However, "[i]t is only necessary that the unlawfulness of the official's act [be] apparent in view of pre-existing law." *Hall v. Lombardi,* 996 F.2d 954, 958 (1993), *cert. denied*, 510 U.S. 1047, 114 S. Ct. 698, 126 L. Ed. 2d 665 (1994). Therefore, if the law claimed to have been violated was clearly established, the qualified immunity defense ordinarily fails, "since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818-19, 102 S. Ct. 2727.

*Sexton*, 210 F.3d at 909-10.

As noted, Milligan admitted in his deposition testimony that he understood the Facebook posts to refer to his decision regarding the employees, and that a number of his constituents also interpreted the Facebook posts in this manner—they were concerned enough to call him at home to complain about his actions. And as noted, the termination decisions were a matter of public concern. The Court cannot grant summary judgment on the ground that no reasonable person could have understood Mattingly's Facebook posts to be speech on a matter of public concern because there is evidence in the record to the contrary.

Before December 2010, it was clearly established that a public employer may not fire an employee for speech relating to a matter of public concern where that speech causes no disruption to the workplace. *See Pickering*, 391 U.S. 563, 88 S. Ct. 1731; *Connick*, 461 U.S. 138, 103 S. Ct. 1684. Milligan is not entitled to qualified immunity for retaliating against Mattingly because of her Facebook posts.[2]

**B.      Free Association and Right to Campaign**

Milligan also contends that Mattingly cannot present evidence creating a genuine dispute as to a material fact regarding whether Milligan discharged her in retaliation for associating with supporters of Kidd and campaigning on his behalf. It is undisputed that the First Amendment protects political association and expression. *See Buckley v. Valeo*, 424 U.S. 1, 15, 96 S. Ct. 612, 632, 46 L. Ed. 2d 659 (1976). Milligan concedes, for the sake of his summary judgment motion, that

---

[2] Mattingly argues in her brief that, in addition to discharging her in retaliation for exercising her right to free speech, Milligan violated her right to be free from prior restraint by conditioning her employment on her remaining silent. No separate prior restraint claim is alleged in Mattingly's amended complaint, so the Court will not address that issue. *Cf. Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840-41 (8th Cir. 2004) (district court did not abuse discretion by rejecting the plaintiff's attempt to amend her complaint by raising an additional claim in her response to the motion for summary judgment).

this right is also protected under the Arkansas Constitution. *See* Ark. Const. art II, § 6 ("The free communication of thoughts and opinions, is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects, being responsible for the abuse of such right."). However, Milligan argues that Mattingly is unable to present evidence that he knew that she supported Kidd, much less that he retaliated against her because of that support. Mattingly argues that a jury could infer that Milligan knew of her political association with Kidd and terminated her for it based on the fact that Mattingly, while wearing a Kidd campaign shirt, saw Milligan at a parade and the fact that he terminated her after she associated herself, through her Facebook posts, with the four employees who were terminated, at least three of whom supported Kidd.

Mattingly admits that she does not know if Milligan saw her at the parade. Milligan testified that he did not see her there. Mattingly and Milligan both testified that they had never met. This evidence does not create a genuine dispute as to material fact. Mattingly's testimony that she saw Milligan but does not know if he saw her is consistent with Milligan's testimony that he did not see her. *See*, *e.g.*, *Bias v. Advantage Intern., Inc.*, 905 F.2d 1558, 1562-63 (D.C. Cir. 1990) (holding that the plaintiff failed to establish a genuine issue of disputed fact by offering evidence which was consistent with the defendant's evidence warranting summary judgment).

Mattingly argues that a jury could infer that Milligan knew that Mattingly supported Kidd and retaliated against her for it because her Facebook post expressed sadness at the termination of her coworkers, some of whom Milligan knew had supported Kidd. Mattingly's argument depends on a flimsy inferential leap, namely, that Milligan understood her statement, "I am trying my heart goes out to the ladies in my office that were told by letter they were no longer needed... It's sad"

10

to mean, not only that she had sympathy for the terminated co-workers but also that she had supported Kidd during the election. While all reasonable inferences should be drawn in Mattingly's favor at the summary judgment stage, the inference that Mattingly asks the Court to draw is not a reasonable one. Without evidence that Milligan knew that Mattingly supported Kidd, Mattingly's claim cannot survive summary judgment.

Furthermore, even if Mattingly could prove that Milligan knew that she supported Kidd when he terminated her, Mattingly has not offered sufficient evidence to create a genuine issue of material fact as to whether she was terminated because of her association with Kidd. *See Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011) ("Generally, more than a temporal connection [between the protected activity and the termination decision] is required to present a genuine factual issue on retaliation[.]") (internal quotation omitted). Milligan's motion for summary judgment will be granted with respect to Mattingly's free association and right to campaign claim.

**C.     Right to Remonstrate**

As noted, on December 28, 2010, Milligan spoke with Mattingly. Milligan testified at his deposition that Mattingly told him "that what she did in her own person time was her business," "[s]he was going to continue to do what she wanted to do, and if [Milligan] didn't like it, then [they] could split company." Milligan further testified that he "told her that [he] was going to take her up on her offer" to split. Combining this evidence with her argument that Milligan was trying to control her speech by telling her to "call the dogs off," Mattingly contends that, if Milligan's account of the conversation were believed, a reasonable jury could find that he terminated her because she objected to his effort to impose a prior restraint on her speech. Mattingly argues that this violates the Arkansas Constitution. Ark. Const. art. II, § 4 ("The right of the people peaceably to assemble,

to consult for the common good; and to petition, by address or remonstrance, the government, or any department thereof, shall never be abridged.").

Mattingly contends that the Arkansas Constitution creates a specific "right to remonstrate," and that this right is something different from the right to free speech and the right to petition the government for redress of grievances because both the terms "remonstrate" and "petition" are found in the Arkansas Constitution and, therefore, must mean something different than "remonstrate." *See Sykes v. Williams*, 373 Ark.236, 242, 283 S.W.3d 209, 215 (2008) ("This court construes statutes so that no word is left void, superfluous, or insignificant."). Mattingly argues that the "remonstrate" language in the Arkansas Constitution confers a right on each citizen to object to, protest, or oppose an officer's course of action, and to bring a lawsuit if the officer attempts to retaliate against a citizen for exercising this right.

Milligan contends that the word "remonstrance" is synonymous with the term "petition" and confers no additional rights beyond those protected by the First Amendment to the United States Constitution. Milligan argues that "remonstrate" denotes a meaning of "petition" because the phrase "by address and remonstrate" modifies the phrase "to petition" in the Arkansas Constitution. Milligan offers a review of every Arkansas opinion using the term "remonstrate" or a derivative of it and notes that the term does not have a definitive meaning in the Arkansas cases. Both sides point to dictionary definitions indicating that "to remonstrate" may mean either "to petition," or "to protest and object."

The Court will not resolve this dispute. The "right to remonstrate," as Mattingly understands it, was not clearly established in December 2010 and is not clearly established now, so Milligan is entitled to qualified immunity on this claim. *Simons v. Marshall*, 369 Ark. 447, 452-53, 255 S.W.3d

838, 842-43 (2007); *Fegans v. Norris*, 351 Ark. 200, 207-08, 89 S.W.3d 919, 924-25 (2002). Therefore, Milligan's motion for summary judgment on Mattingly's right to remonstrate claim will be granted.

## CONCLUSION

For the reasons stated above, Milligan's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Mattingly's free association and right to campaign claim as well as her right to remonstrate claim, are dismissed. Summary judgment is denied as to Mattingly's free speech claim. Document #13.

IT IS SO ORDERED this 1st day of November, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE